FILED

APR 25 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Katherine Neff Welsh (312) 469-6309

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ORVILLE COCHRAN

Case No.: 17CR 265

Magistrate Judge Maria Valdez

## AFFIDAVIT IN REMOVAL PROCEEDING

I, MARLON BURTON, personally appearing before United States Magistrate Judge Maria Valdez and being duly sworn on oath, state that as a federal law enforcement officer I have been informed that ORVILLE COCHRAN has been charged by Indictment in the Eastern District of Wisconsin with the following criminal offenses: conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, in violation of Title 18, United States Code, Section 1962(d); conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Section 2; and interstate _____ in violation of Title 18, United States Code, Section 844(i) and 2.

A copy of the Indictment is attached. A copy of the arrest warrant also is attached.

MARLON BURTON
Deputy U.S. Marshal
United States Marshals Service

SUBSCRIBED AND SWORN to before me this 25th day of April, 2017.

MARIA VALDEZ
United States Magistrate Judge

# SEALED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

             Plaintiff,                Case No. 01-CR-108   (LSA)

        v.

**EDWARD JOHN ANASTAS,**
    a/k/a "Shock",
**RONALD ALAN TALMADGE,**
    a/k/a "Rotten Ronnie",
**THOMAS EDWARD SIENKOWSKI,**
    a/k/a "Woody",
**SCOTT ALAN HAMMOND,**
    a/k/a "Rhino",
**ORVILLE JEROME COCHRAN,**
    a/k/a "Orvie",
**GREGORY ALLEN MAYER,**
    a/k/a "Nightmare",

          Defendants.         **INDICTMENT**

THE GRAND JURY CHARGES:

## I. Introduction

1.    At times material to this indictment:

       a. The American Outlaw Association, better known as, and hereinafter referred to as, the Outlaws Motorcycle Club, was an international organization which engaged in, and the activities of which affect, interstate and foreign commerce.

       b. Within the United States, the Outlaws Motorcycle Club is composed of individual chapters located in various cities throughout the country. Each chapter has a president, vice-president, treasurer and enforcer, as well as general members.

c. The various chapters are grouped into regions headed by a regional president and several additional regional officers. The regions, and each chapter thereof, ultimately fall under the authority of the national president.

d. The White Region is comprised of three (3) chapters located in the Chicago metropolitan area, and chapters located in Joliet, Illinois and Gary, Indiana; for a portion of the time period alleged in this indictment, it also included chapters in Milwaukee, Janesville, and LaCrosse, Wisconsin. Since approximately 2000, these latter three chapters have been part of the Gold Region, which also includes chapters in Park Falls, and Sheboygan, Wisconsin.

e. Membership in the Outlaws Motorcycle Club, which is limited to males only, is the result of a controlled process, beginning with an associate or "hanger-on" status, followed by a pledge or probationary period lasting approximately six (6) months. During the pledge period, probates are expected to perform duties and assignments as directed by full members or "patches". Full membership or "patch" status requires the unanimous vote of the chapter sponsoring membership. New chapters will go through a probationary period for both the chapter and the individual members. Full Outlaws status for both the chapter and the members requires the unanimous vote of the chapter presidents within the region.

f. "Patches" and probates are expected to abide by a written code. Violations of the code may result in fines, expulsion, another probationary period, and/or physical violence.

g. The vestments or "colors" of full club membership include a leather or denim vest with a back patch consisting of the club emblem (skull with crossed pistons), surrounded by a top "rocker" with the word "Outlaws" and a bottom "rocker" identifying the chapter (e.g. "Milwaukee"). The vests may also display other symbols such as "MC" (motorcycle club), "A.O.A.", and a "One Percenter" diamond.

h. Probates wear vests displaying patches identifying their probationary status. Females,

though excluded from membership, may wear vests with patches reading "Property of Outlaws". Females associated with members, pledges or associates are referred to as "Old Ladies".

i. Members pay monthly dues to the chapter, a percentage of which is forwarded to the regional and national organizations. Members are also subject to special assessments or "taxes" for various special purposes. Funds are transferred between chapters and the regional and national organizations as the need may require.

j. Chapter meetings are held regularly and are referred to as "church". Only full, patched, members are allowed to attend "church".

k. Patched and probate members are required to attend certain special events referred to as "runs", which may be organized on either the national or regional level. Failure to attend a "run" as required, subjects the member to disciplinary sanction.

## II. The Enterprise

2. At various times relevant to this indictment, the defendants and others known and unknown, were members and associates of the White Region and/or Gold Region of the Outlaws Motorcycle Club, a criminal organization whose members and associates engaged in criminal acts, including murder, arson, extortion (intimidation) and narcotics trafficking.

3. During the time period alleged in this indictment, the Outlaws Motorcycle Club, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter the enterprise), that is, a group of individuals associated in fact. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

4. The Milwaukee Chapter of the Outlaws Motorcycle Club (hereinafter the Milwaukee Chapter) is a local chapter of the national club, formerly a part of the White Region, and now a part of the Gold Region. This chapter is active primarily in the Milwaukee, Wisconsin metropolitan area. The Milwaukee

Chapter has operated from a chapter house located at 1835-1839 South 2nd Street, Milwaukee, Milwaukee County, in the Eastern District of Wisconsin, from at least 1988 to the present. The Milwaukee Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

5. The Wisconsin/Stateline Chapter of the Outlaws Motorcycle Club (hereinafter the Wisconsin Chapter) is a local chapter of the national club, formerly part of the White Region, now part of the Gold Region. This chapter is active primarily within the southeastern/central counties of Wisconsin and the northeastern/central counties of Illinois, i.e. the stateline area. The chapter became an Outlaws chapter on or about January 1, 1991. Prior to that time, the chapter existed as the Boozerunners, a local motorcycle club allied with the Outlaws. The Boozerunners, and later the Wisconsin Chapter, operated from a chapter house located in Antioch, Lake County, in the Northern District of Illinois from at least 1988 until 1994, when the clubhouse burned. Thereafter, the Wisconsin Chapter established a clubhouse at 1263 South Cherry Street, Janesville, Rock County, in the Western District of Wisconsin, which the chapter used until recently. The Wisconsin Chapter also used a facility located at 1106 Main Street, Union Grove, Racine County, in the Eastern District of Wisconsin, as a meeting place. The Wisconsin Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

6. The Sheboygan Chapter of the Outlaws Motorcycle Club (hereinafter the Sheboygan Chapter) is a local chapter of the national club, also formerly of the White Region, now assigned to the Gold Region. The Sheboygan Chapter is active primarily within the southeastern/central counties of Wisconsin. The chapter became an Outlaws Chapter in approximately 1998. Prior to that time, the chapter existed as the Regulators, a local motorcycle club allied with the Outlaws. The Sheboygan Chapter operates from a chapter house located at 1317 Illinois Avenue, Sheboygan Wisconsin. The Sheboygan Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

4

7.     The Park Falls Chapter of the Outlaws Motorcycle Club (hereinafter the Park Falls Chapter) is a local chapter of the national club, also formerly of the White Region, now assigned to the Gold Region, which is active primarily within the northwestern/central counties of Wisconsin. The chapter became an Outlaws chapter in approximately 1997. This chapter is comprised of several former members of various clubs which are allied with the Outlaws. The Park Falls Chapter operates from a chapter house located at 714 South 5th Avenue, Park Falls, Price County, Western District of Wisconsin. The Park Falls Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

8.     The LaCrosse Chapter of the Outlaws Motorcycle Club (hereinafter the LaCrosse Chapter) is a local chapter of the national club, Gold Region, which is active primarily in the LaCrosse County and west central Wisconsin area. The LaCrosse Chapter has operated from a chapter house located at 504 Avon Street, LaCrosse, LaCrosse County, in the Western District of Wisconsin from 1996 to the present. The LaCrosse Chapter became an Outlaws Motorcycle Club chapter on or about February 15, 1997. The LaCrosse Chapter has elected officers and formal membership categories indicated by appropriate vestments.

9.     Chicago (Southside) Chapter of the Outlaws Motorcycle Club (hereinafter the Chicago (Southside) Chapter) is a local chapter of the national club, White Region, which is active primarily in the Chicago, Illinois metropolitan area. The Chicago (Southside) Chapter has operated from a chapter house located at 2601-03 W. 25th Street, Chicago, Cook County, in the Northern District of Illinois, from at least 1992 to the present. From at least 1988 to 1992 the chapter operated from a chapter house located at 2201 Roosevelt Road, Chicago, Cook County, in the Northern District of Illinois. Prior to approximately July 15, 1995, the Chicago (Southside) Chapter was the only local chapter of the Outlaws Motorcycle Club in the Chicago metropolitan area, and was known as the Chicago Chapter. The Chicago (Southside) Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

5

10.    The Chicago (Northside) Chapter of the Outlaws Motorcycle Club (hereinafter the Chicago (Northside) Chapter) is a local chapter of the national club, White Region, which is active primarily in the Chicago, Illinois, metropolitan area. The chapter became an Outlaws chapter on or about July 15, 1995. Prior to that time, the chapter existed as the Wheelmen, a local motorcycle club allied with the Outlaws. The Wheelmen, and later the Chicago (Northside) Chapter, operated from a chapter house located at 3745 Division Street, Chicago, Cook County, in the Northern District of Illinois, from at least 1988 to the present. The Chicago (Northside) Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

11.    The Chicago (Westside) Chapter of the Outlaws Motorcycle Club (hereinafter the Chicago (Westside) Chapter) is a local chapter of the national club, White Region, which is active primarily in the Chicago, Illinois, metropolitan area. The chapter became an Outlaws chapter on or about July 15, 1995. Prior to that time, the chapter existed as the High Spirits, a local motorcycle club allied with the Outlaws. The High Spirits, and later the Chicago (Westside) Chapter, operated from a chapter house located at 959 South Grace Street, Elgin, Kane County, Northern District of Illinois from at least 2000 until the present. Prior to that they operated from clubhouses at 214 Park Street, Bensenville, Du Page County, in the Northern District of Illinois, and at 1228 E. Harding, Des Plaines, Cook County, in the Northern District of Illinois. The Chicago (Westside) Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

12.    The Joliet Chapter of the Outlaws Motorcycle Club (hereinafter the Joliet Chapter) is a local chapter of the national club, White Region, which is active primarily in Will County, Illinois. The Joliet Chapter has operated from a chapter house located at 1917 E. Washington Street, Joliet, Will County, in the Northern District of Illinois, from at least 1992 to the present. From at least 1988 to 1992, the Joliet Chapter operated from a chapter house located at 204 Oak Street, Lockport, Will County, in the Northern

6

District of Illinois. The Joliet Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

13.     The Gary Chapter of the Outlaws Motorcycle Club (hereinafter the Gary Chapter) is a local chapter of the national club, White Region, which is active primarily in Lake County, and northeast, Indiana area. The Gary Chapter has operated from a chapter house located at 3265 Carolina Street, Gary, Lake County, in the Northern District of Indiana from at least 1988 to the present. The Gary Chapter has elected officers and formal membership categories indicated by the appropriate vestments.

14.     The following defendants were members and/or associates of the Outlaws Motorcycle Club:

(a)     Defendant Edward J. Anastas, a/k/a "Shock", DOB 6/24/57, was a member and president of the Milwaukee Chapter of the Outlaws Motorcycle Club. He is presently the president of the Gold Region.

(b)     Defendant Ronald A. Talmadge, a/k/a "Rotten Ronnie", DOB 8/25/58, was a member and president of the Joliet Chapter of the Outlaws Motorcycle Club. He is presently the president of the White Region.

(c)     Defendant Thomas E. Sienkowski, a/k/a "Woody", DOB 10/5/56, was a member and president of the Milwaukee Chapter of the Outlaws Motorcycle Club. He is presently the president of that chapter.

(d)     Defendant Scott A. Hammond, a/k/a "Rhino", DOB 11/7/59, was a member and of the Milwaukee Chapter of the Outlaws Motorcycle Club. He is presently the president of the Park Falls Chapter.

(e)     Defendant Orville J. Cochran, a/k/a "Orvie", DOB 1/1/50, was a member and president of the Chicago Southside Chapter of the Outlaws Motorcycle Club.

7

(f)     Defendant Gregory A. Mayer, a/k/a "Nightmare", DOB 9/26/47, was a member of the Wisconsin Chapter, and is presently a member of the Gary Chapter of the Outlaws Motorcycle Club.

## III. Objects and Purposes

15.    It was an object and purpose of the enterprise to enforce discipline among members of the Outlaws Motorcycle Club by acts of violence.

16.    It was an object and purpose of the enterprise to protect and defend territory considered to be within the control of the Outlaws Motorcycle Club by acts of violence and murder committed against members of rival motorcycle clubs.

17.    It was an object and purpose of the enterprise to possess and traffick in controlled substances for the benefit of the Outlaws Motorcycle Club and its members.

## IV. Means and Methods

18.    To accomplish some of the objects and purposes of the enterprise, the defendants and others known and unknown to the grand jury, used, among others, the following means and methods:

a. On or about September 25, 1994, in Erie County, Western District of New York, members of the enterprise, did kill Michael Quale, a Hell's Angel, under circumstances evincing a depraved indifference to human life, by engaging in conduct which created a grave risk of death to Michael Quale, and thereby caused the death of Michael Quale; and members of the enterprise, including Edward Anastas, Ronald Talmadge and Orville Cochran, did solicit, request, command, importune and intentionally aid and abet in the commission of said murder, all in violation of Section 125.25 (2) and Section 20.00 of the Penal Laws of the State of New York.

b. On or about March 3, 1995, in Cook County, Northern District of Illinois, members of the enterprise did knowingly and intentionally kill Jack Castle, a Hell's Angel, without lawful justification,

by an act that was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty, and which act was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme and design to take a human life by unlawful means, and which conduct created a reasonable expectation that the death of a human being would result therefrom; and members of the enterprise, including Edward Anastas, Ronald Talmadge and Orville Cochran, with intent to facilitate the commission of the murder, did solicit, aid, abet, agree and attempt to aid in the planning and commission of the murder, all in violation of Chapter 720, Sections 5/9-1 (a) and (b) and 5/5-1 and 5/5-2 of the Illinois Statutes.

19.    To accomplish some of the objects and purposes of the enterprise, the defendants and others known and unknown to the grand jury, used, among others, the following additional means and methods:

a.   Acts involving murder, including conspiracy to murder rival gang members, particularly members of the Hell's Angels Motorcycle Club and other motorcycle clubs allied with the Hell's Angels.

b.   Acts involving arson against the person and properties of rival gangs and their members, particularly the Hell's Angels Motorcycle Club and other motorcycle clubs allied with the Hell's Angels.

c.   Acts of violence, intimidation and threats against members and associates of other motorcycle clubs including, but not limited to, the Hell's Angels and other motorcycle clubs allied with the Hell's Angels.

d.   Acts designed to intimidate owners, managers, employees, and customers of businesses frequented by members of rival gangs, particularly the Hell's Angels Motorcycle Club and other motorcycle clubs allied with the Hell's Angels.

e.   Acts of the felonious dealing in controlled substances, including cocaine and marijuana.

20.    It was further part of the means and method of the enterprise that the defendants and others known and unknown to the grand jury would possess, transport, and use firearms, ammunition, silencers,

9

explosives, explosive devices, and other deadly weapons, including but not limited to knives, and would use violence and threats of violence to promote and conduct the affairs of the enterprise.

21. It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would assert that particular businesses and geographic locations were the exclusive territory of the Outlaws Motorcycle Club.

22. It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would distribute quantities of controlled substances to each other and otherwise deal in controlled substances.

23. It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would assert that the States of Wisconsin, Illinois and Indiana and parts of the State of New York, and elsewhere, was the territory of the Outlaws Motorcycle Club and that no other motorcycle clubs or organizations could operate or display "colors" within said territories without the consent of the Outlaws Motorcycle Club.

24. It was further part of the means and methods of the enterprise that those defendants and other members known and unknown to the grand jury, who did not have felony convictions would possess firearms and ammunition for the use of other defendants and members known and unknown to the grand jury who did have felony convictions.

25. It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would construct, possess, use and threaten the use of explosives and explosive devices to promote and conduct the affairs of the enterprise.

26. It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would try to acquire and would acquire and possess law enforcement information regarding motorcycle clubs, including information about members, associates,

10

and activities, and information regarding the activities of law enforcement concerning the Outlaws Motorcycle Club and other rival motorcycle clubs.

27.    It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would and did utilize the United States mail, other private and commercial carriers, and wire communications to promote and conduct the affairs of the enterprise.

28.    It was further part of the means and methods of the enterprise that the defendants and others known and unknown to the grand jury would and did misrepresent, conceal and hide, and caused to be misrepresented, concealed, and hidden, the purpose of the acts, and the acts, done in furtherance of the enterprise.

## COUNT ONE

### V. The Racketeering Conspiracy

29.    Sections I, II, III and IV of the Introductory allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30.    From a date unknown to the grand jury, but at least before January 1, 1988, and continuing at least to the present, in the Eastern District of Wisconsin and elsewhere, the defendants,

**Edward John Anastas**
a/k/a "Shock",
**Ronald Alan Talmadge**
a/k/a "Rotten Ronnie",
**Thomas Edward Sienkowski**
a/k/a "Woody",
**Scott Alan Hammond**
a/k/a "Rhino",
**Orville Jerome Cochran**
a/k/a "Orvie",

being persons employed by and associated with the enterprise described in Section II, that is, the Outlaws Motorcycle Club, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, willfully and unlawfully did combine, conspire, confederate, and agree

11

among themselves and with others known and unknown to the grand jury, to commit an offense against the United States, to wit: to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of multiple acts involving state offenses, including murder, attempt murder and conspiracy to commit murder, in violation of Chapter 720, Sections 5/9-1 (a) and (b), 5/5-1, 5/5-2, 5/8-2 and 5/8-4 of the Illinois Statutes; Chapter 940.01, 939.05 and 939.31 of the Wisconsin Statutes; Sections 609.185, 609.17, 609.175 and 609.05 of the Minnesota Statutes; Sections 35-42-1-1, 35-41-2-4, 35-41-5-2, and 35-41-5-1 of the Indiana Statutes; and Sections 125.25 and 20.00 of the Penal Laws of the State of New York; arson, attempt arson and conspiracy to commit arson, in violation of former Chapter 38, Section 20-1 and 5-1, and present Chapter 720, 5/20-1, 5/5-1, 5/5-2, 5/8-2 and 5/8-4 of the Illinois Statutes; Sections 609.562, 609.17, 609.175 and 609.05 of the Minnesota Statutes; extortion and conspiracy to commit extortion, in violation of Chapter 720, Sections 5/12-6, 5/5-1, 5/5-2, 5/8-2 and 5/8-4 of the Illinois Statutes; and multiple acts involving narcotics trafficking including cocaine, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

It was a further part of the conspiracy that the defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962 (d).

## VII. Overt Acts in Furtherance of the Racketeering Conspiracy

To effect the objects of the conspiracy, the defendants and other co-conspirators committed diverse overt acts within the Eastern District of Wisconsin and elsewhere. These acts included but are not limited to the following.

31. In or about November 1990, the defendant Edward Anastas, and another approached conspirator Randall Miller and another, who were then members of the Outlaws prospective club, the Boozerunners, and suggested that they place a bomb at the Hell's Henchmen Clubhouse in Rockford, Illinois;

32. On or about November 13, 1990, conspirators Randall Miller, Kevin O'Neill, and another, placed a fire-extinguisher bomb at the rear door of the Rockford Hell's Henchmen Clubhouse, which bomb subsequently detonated, destroying property.

33. On or about November 14, 1990, conspirators Randall Miller and another met with defendants Edward Anastas, Thomas Sienkowski and Scott Hammond, and a fourth conspirator, at which time they celebrated the success of the Rockford bomb, and Anastas told Miller and another that they "had done a good job."

34. On a date sometime prior to November 13, 1990, a known conspirator assisted with the construction of the fire-extinguisher bomb that was placed by conspirators Miller and O'Neill and another on November 13, 1990.

35. Between December 1992 and at least until the date of this indictment, the Regional chapter bosses and members, including the defendants Edward Anastas, Ronald Talmadge, Thomas Sienkowski, Scott Hammond, and Orville Cochran met on a regular basis. At these meetings, referred to by the Outlaws as 'bosses meetings,' they discussed, among other things, the war between the Outlaws and the Hell's Angels, and the specific violent measures that the Outlaws would undertake to advance the interests of this war.

36. On or about January of 1993, large groups of Outlaws, from various chapters, including the defendants Edward Anastas, Scott Hammond, Thomas Sienkowski, and Orville Cochran traveled from Wisconsin, Illinois, and Indiana to LaCrosse, Wisconsin, armed with dangerous weapons.

37. On or about January, 1993, the defendant Edward Anastas and others met at a restaurant owned by a Milwaukee Outlaw, in Milwaukee, Eastern District of Wisconsin to plan the events which would occur when the Outlaws arrived in LaCrosse, Wisconsin to confront Hell's Angels.

38. On or about January, 1993, members of Outlaws chapters traveled from Wisconsin, Illinois and Indiana to the home of defendant Thomas Sienkowski, where they loaded guns into automobiles destined for LaCrosse, Wisconsin, where they intended an armed confrontation with Hell's Angels.

39. On or about November 1993, the defendants Edward Anastas, Thomas Sienkowski, and Scott Hammond met with conspirators James Schneider and Randall Miller in a Milwaukee restaurant to discuss the intended murder of Minneapolis Hell's Angel Charter president, Patrick Matter. At this meeting, Anastas provided photocopied surveillance materials pertaining to the Hell's Angels.

40. On or about November 1993, the defendant Scott Hammond, and conspirators James Schneider and Randall Miller traveled to Minneapolis, Minnesota, armed with dangerous weapons.

41. On or about November 1993, the defendant Scott Hammond, using monies provided by the Outlaws Region, purchased ammunition, clothing, lodging, a meal, and the rental of a vehicle for the participants in the plan to kill Patrick Matter.

42. Between on or about November 1993 and on or about December 1993, conspirators James Schneider and Randall Miller traveled to the home of defendant Thomas Sienkowski, where they assisted a co-conspirator with the construction of an explosive device.

43. On or about December 15, 1993, conspirators Randall Miller, Kevin O'Neill, David Kadlec and another traveled from Wisconsin and Indiana to Minnesota, where they placed an explosive device on a truck owned by Patrick Matter, causing damage to the truck.

44. On or about December 31, 1993, co-conspirator Harry Bowman who was then the Outlaws national president, advised the Outlaws membership, which included members and officers from

14

Wisconsin, Illinois and Indiana, at a national meeting in Florida, that "1994 would be a rotten year," and that the chapter bosses in the various regions were to "prepare for a state of war."

45. Beginning in the spring of 1994 and continuing throughout 1994, members of the Outlaws Chapters engaged in activity which they called "hunting trips." The purpose of these trips was to locate, confront and intimidate Hell's Angels, Hell's Henchman, and members of their affiliate clubs.

46. Between on or about March 1, 1994, and on or about March 19, 1994, at JR's Watering Hole Tavern, in Calumet City, Northern District of Illinois, Raymond Morgan, a co-conspirator, pointed a firearm at Elizabeth Aaron, a manager at JR's and told her that she should stop serving Hell's Angels and their associates.

47. On or about March 19, 1994, large groups of Outlaws from within the White Region, including defendants Thomas Sienkowski, Scott Hammond, and Orville Cochran, traveled from locations in Wisconsin, Illinois, and Indiana, to the clubhouse of the High Spirits, an affiliate club located in Chicago, Illinois, for the purpose of planning a confrontation with rival club members and tavern owners at JR's Watering Hole Tavern in Calumet City, Illinois.

48. On or about March 19, 1994, large groups of Outlaws, including defendants Orville Cochran, Thomas Sienkowski, and Scott Hammond, traveled from the clubhouse of an affiliate club in Chicago, Illinois to JR's Watering Hole, Tavern, located in Calumet City, Illinois where they attacked patrons and destroyed the tavern interior as a message to rival motorcycle club members.

49. On or about June 14, 1994, large groups of Outlaws including defendants Scott Hammond, and Thomas Sienkowski, traveled from Wisconsin, Illinois, and Indiana to Rockford, Illinois where they met in a hotel.

50.    On or about June 14, 1994, defendants Thomas Sienkowski, Scott Hammond and co-conspirator James Schneider traveled in an automobile, armed with an assault rifle, with the intent to shoot and kill Hell's Henchmen.

51.    On or about June 26, 1994, large groups of Outlaws including defendants Edward Anastas, Scott Hammond, Thomas Sienkowski, Ronald Talmadge, and Orville Cochran, traveled from Wisconsin, Illinois, and Indiana to Lake County, Northern District of Indiana to confront rival club members.

52.    On or about June 26, 1994, in Lake County, Northern District of Indiana, the defendants Edward Anastas, Thomas Sienkowski, and Scott Hammond directed activities of fellow Outlaws from a fortified van containing numerous firearms and other dangerous weapons, in a planned assault on rival gang members.

53.    Between on or about July 1, 1994, and on or about August 4, 1994 conspirator Carl Warneke obtained bomb components.

54.    On or about August 4, 1994, the defendant Orville Cochran, and conspirators Carl Warneke and Richard Mroch transported a bomb in Cochran's vehicle to a the Southwest Tattoo Emporium, Ltd. in Chicago, Northern District of Illinois where Mroch dispatched the bomb.

55.    Between on or about September 1, 1994 and on or about September 25, 1994 Outlaws chapter bosses including Edward Anastas, Ronald Talmadge, and others attended a meeting at the Best Western Hotel, Highway 50, in the Eastern District of Wisconsin to plan travel to New York state to confront rival club members.

56.    Between on or about September 23, 1994 and on or about September 25, 1994, large groups of Outlaws, including the defendants Orville Cochran, and Ronald Talmadge traveled from Wisconsin, Illinois and Indiana, to Lancaster, Western District of New York to confront rival club members.

57.     On or about September 24, 1994, numerous Outlaws, including the defendants Ronald Talmadge, and Orville Cochran attended a meeting where they participated in planning for a confrontation at the Lancaster Speedway, Erie County, Western District of New York.

58.     On or about September 25, 1994, numerous Outlaw members including the defendants Orville Cochran, and Ronald Talmadge assembled at the Lancaster Speedway, at which time, Outlaws members assaulted Hell's Angels with knives, fists, guns and other dangerous weapons, resulting in the death of Michael Quale.

59.     On September 25, 1994, in Erie County, Western District of New York, the defendant, Ronald Talmadge disposed of firearms which had been carried to the Lancaster Speedway.

60.     On or about April 1995, regional and chapter bosses, including the defendants Edward Anastas and Ronald Talmadge attended a meeting in Chattanooga, Tennessee where they discussed levying a tax on the Outlaw nation. The tax was to cover the cost of defense attorneys for members of the Barbarian Motorcycle club, an Outlaws associate club which had assisted Outlaws at the Lancaster Speedway.

61.     On or about September 1994, the defendant Thomas Sienkowski obtained bomb components including smokeless black powder; and additional material including diamond plate steel which he used to construct a box to hold a bomb.

62.     On or about September 1994, the defendant Edward Anastas and a known conspirator constructed an explosive device.

63.     Between on or about September 1994 and on or about November 1994, the defendants Thomas Sienkowski and Scott Hammond modified a stolen Ford Taurus to transport a bomb.

64.     On or about October 1994, at a bosses meeting at the Best Western, Highway 50, Eastern District of Wisconsin, the defendants Edward Anastas, Thomas Sienkowski, and Scott Hammond met with

17

other Outlaws bosses and discussed the anticipated bombing of the Hell's Henchmen Clubhouse in Chicago, Northern District of Illinois.

65.     On or about November 7, 1994, conspirators placed a bomb at the Hell's Henchmen clubhouse on Grand Avenue in Chicago, Northern District of Illinois.

66.     On or about December 16, 1994 the defendant Orville Cochran traveled to the Hell's Henchmen clubhouse on Grand Avenue, in Chicago, Northern District of Illinois to assist conspirator Richard Mroch with a plan to burn the clubhouse.

67.     Between approximately February 1995 and March 3, 1995, Outlaws members and associates, including the defendant Orville Cochran conducted surveillance on Chicago Hell's Angel member Jack Castle, in preparation to kill Castle.

68.     On or about March 3, 1995, defendant Orville Cochran and a co-conspirator did travel in an automobile to the location of Ignoffo Trucking on George Street in Chicago, Northern District of Illinois, where they shot and killed Jack Castle.

69.     On or about March 6, 1995 the defendant Ronald Talmadge drove the automobile referenced in the preceding paragraph away from Chicago, and subsequently had it delivered to All Will County Auto Parts and Wreckers, Inc. where he made arrangements to have the vehicle crushed.

70.     On or about June 6, 1996, the defendants Edward Anastas, Ronald Talmadge, Scott Hammond, Thomas Sienkowski and Orville Cochran traveled from Wisconsin, Illinois and Indiana, to the U.S. 41 International Dragway, Newton County, Northern District of Indiana to confront rival gang members.

71.     On or about June 6, 1996, the defendants Edward Anastas, Ronald Talmadge and Scott Hammond met to discuss the degree of force to level at rival gang members who might appear at the U.S. 41 International Dragway, on or about that date.

72. On or about June 6, 1996, the defendant Ronald Talmadge brought two vehicles to the U.S. International Dragway, in Newton County, Northern District of Indiana for use in the armed confrontation of rival gang members.

73. On or about June 6, 1996, the defendants Scott Hammond, Thomas Sienkowski and others positioned themselves in a vehicle with firearms and walkie talkies in preparation for a confrontation with rival gang members.

74. Between at least January 1989 and continuing at least to the present, Outlaws members, including Edward Anastas, Ronald Talmadge, Thomas Sienkowski, Scott Hammond and Orville Cochran delivered quantities of controlled substances including cocaine and marijuana to other members of the Outlaws Motorcycle club, and others.

75. During the time period identified in this indictment, members of the Outlaws Motorcycle club, including Edward Anastas, Ronald Talmadge, Thomas Sienkowski, Scott Hammond, and Orville Cochran attended bosses meetings, where they discussed, among other things the continued expansion of the Outlaw Motorcycle Club.

76. During the time period identified in this indictment, the Outlaws Motorcycle club continued to protect its territory through expansion, by creating new chapters and new regions.

## COUNT TWO

Between on or about January 1, 1989 and continuing at least to the time of indictment, in the

Eastern District of Wisconsin, and elsewhere, the defendants,

**Edward John Anastas**
a/k/a/ "Shock",
**Ronald Alan Talmadge**
a/k/a "Rotten Ronnie",
**Thomas Edward Sienkowski**
a/k/a "Woody",
**Scott Alan Hammond**
a/k/a "Rhino",
**Orville Jerome Cochran**
a/k/a "Orvie",
**Gregory Allen Mayer**
a/k/a "Nightmare,"

did knowingly and intentionally combine, conspire, confederate and agree among themselves and with

others known and unknown to the grand jury, to distribute and to possess with intent to distribute five

kilograms or more of cocaine, a Schedule II controlled substance, contrary to the provisions of Title 21,

Unites States Code, Section 841 (a) (1) and 846 and Title 18, United States Code, Section 2.

## COUNT THREE

On or about November 7, 1994, in the Eastern District of Wisconsin and the Northern District of Illinois, the defendants,

**Edward John Anastas**
a/k/a "Shock",
**Thomas Edward Sienkowski**
a/k/a "Woody",
**Scott Alan Hammond**
a/k/a "Rhino",

did maliciously damage and destroy, and attempt to damage and destroy by means of fire and explosive, a building, vehicle and other real property used in interstate and foreign commerce, and in activity affecting interstate and foreign commerce in violation of Title 18, United States Code, Sections 844(i) and 2.

## COUNT FOUR

On or about December 16, 1994, in the Northern District of Illinois, defendant,

**Orville Jerome Cochran**
a/k/a "Orvie"

did maliciously damage and destroy, and attempt to damage and destroy by means of fire and explosive, a building, vehicle, and other real and personal property used in interstate commerce and foreign commerce, and in activity affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 844(i) and 2.

21

## RICO FORFEITURE ALLEGATIONS

1.     The allegations of Count One of the Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures, pursuant to the provisions of Title 18, United States Code, Section 1963.

2.     The defendants,

**Edward John Anastas**
a/k/a "Shock",
**Ronald Alan Talmadge**
a/k/a "Rotten Ronnie",
**Thomas Edward Sienkowski**
a/k/a "Woody",
**Scott Alan Hammond**
a/k/a "Rhino",
**Orville Jerome Cochran**
a/k/a "Orvie",

a.     have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests, in whatever forms, wherever located, and in whatever names held, are therefore subject to forfeiture to the United States of America, pursuant to Title 18, United States Code, Section 1963(a)(1);

b.     have an interest in, security of, claims against, and property and contractual rights affording a source of influence over, the enterprise named and described herein, which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and property and contractual rights, in whatever names held, in whatever form, and wherever located, are subject to forfeiture to the United States of America, pursuant to Title 18, United States Code, Section 1963(a)(2);

c.     have property consisting and derived from proceeds which the defendants obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section

22

1962, which property, in whatever form, wherever located, and in whatever names held, is subject to forfeiture to the United States of America, pursuant to Title 18, United States Code, Section 1963(a)(3).

3.    The interests subject to forfeiture to the United States of America, pursuant to paragraphs 1 and 2 above, include but are not limited to the following:

a.    The property located at 1835-1839 South 2nd Street, Milwaukee, Wisconsin, including all land, buildings, fixtures, and chattels known as the Clubhouse.

b.    The property located at 1917 E. Washington Street, Joliet, Illinois, including all land, buildings, fixtures, and chattels known as the Clubhouse.

c.    The property located at 3857 East Ryan Road, Oak Creek, Wisconsin, including all land, buildings, fixtures, and chattels, which is a single-family residence owned by Edward Anastas.

d.    The property located at 24000 Apple Road, Waterford, Wisconsin, including all land, buildings, fixtures, chattels, which is a single-family residence owned by Thomas Sienkowski.

e.    A 1991 Chevrolet van, vehicle identification number (VIN) 1GBEG25K2M7134937 bearing Wisconsin license plate number 240BDW, which is registered to Danielle M. Nicgorski at 3857 East ryan road, Oak Creek, Wisconsin 53154.

4.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty,

23

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

## DRUG FORFEITURE ALLEGATIONS

1.     The allegations of Count Two, are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853(a).

2.     From their engagement in violations alleged in Count Two, each offense punishable by imprisonment for more than one year, the defendants,

**Edward John Anastas**
a/k/a "Shock",
**Ronald Alan Talmadge**
a/k/a "Rotten Ronnie",
**Thomas Edward Sienkowski**
a/k/a "Woody",
**Scott Alan Hammond**
a/k/a "Rhino",
**Orville Jerome Cochran**
a/k/a "Orvie",
**Gregory Allen Mayer**
a/k/a "Nightmare",

shall forfeit to the United States all property obtained, directly or indirectly, as the result of such offenses, and any and all property, real and personal, used or intended to be used, in any manner or part, to commit or to facilitate the commission of the aforesaid offenses, with all such interests, wherever located, and in whatever name held.

24

3.    In the event that any property described as being subject to forfeiture pursuant to Title 21, United States Code, Section 853(a), as a result of any act or omission of the defendants:

    a.    Cannot be located upon exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third party;

    c.    Has been placed beyond the jurisdiction of the court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants, up to an amount equivalent to the value of the property described above.

    Pursuant to Title 21, United States Code, Sections 853(a) and 853(p).

**A TRUE BILL:**

**/s/  KATHLEEN J. KOCH**
FOREPERSON

Dated:  **May 16, 2001**

**/s/   JAMES L. SANTELLE**
JAMES L. SANTELLE
United States Attorney

25

06/07/01 THU 08.52 FAX 651 290 3097   BUREAU OF ATF   →→→ COM CENTER   ☒002
06/07/01   11:45   MILWAUKEE ATF → 612 290 3363   NO. 211   002
U.S. ATTORNEY (297-4526)

**SEALED**

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

*WARRANT FOR ARREST*

v.

Case No. **01-Cr 108**

ORVILLE JEROME COCHRAN (01-01-50)
a.k.a "ORVIE",

**TO:** The United States Marshal
and any Authorized United States Officer

    YOU ARE HEREBY COMMANDED to arrest *ORVILLE JEROME COCHRAN*, defendant herein, and bring him forthwith to the nearest magistrate to answer to an Indictment charging him with conspiracy to commit racketeering, in violation of Title 18, United States Code, Sections 1962(c) and (d), and, conspiracy to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

**SOFRON B. NEDILSKY**
Name of Judicial Officer

**Clerk of Court**
Title of Issuing Officer

By: _____
Signature of Issuing Officer

May *17*, 2001: Milwaukee, Wisconsin
Date and Location

(By) Deputy Clerk
Bail fixed at $_____

by _____
Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at |

| DATE RECEIVED: | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST: | | |

AO 442 (Rev. 5/85)ph Warrant for Arrest